BYJELICH *v.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

1. INSURANCE—CONSTRUCTION OF POLICY—STATUTES—OTHER STATES.
    Where no contest exists over the construction of contract of
    insurance, it is unambiguous, its construction is not doubtful
    and either party claims that the law of Pennsylvania, the
    State of which insured was a resident and where the contract
    was made, shall govern its enforcement, the fact that it
    was made in Pennsylvania neither requires the Supreme
    Court of this State to consider the statutes and decisions of
    that State, as they stood at the time the contract of in-
    surance was entered into nor does it defeat the applicability
    of the statute of this State in question (3 Comp. Laws 1929,
    § 12766, as amended by Act No. 220, Pub. Acts 1939).

2. CONSTITUTIONAL LAW—IMPAIRMENT OF CONTRACTS—STATUTES—
    INSURANCE—DIVORCE—ELECTION AND DISCRETION OF BENEFICIARY.
    The legislature has not the right to empower a divorce court
    to decree that the wife, named as beneficiary in a previously-
    executed contract of insurance, may substitute her per-
    sonal judgment and discretion for the discretion and judgment
    of the insured husband on the subject of electing to surrender
    the policy and receive the cash surrender value therefor
    rather than that the policy should be continued as ex-
    tended insurance where the policy forbids assignment,
    since such statute, enacted after the policy was written,
    would impair the obligation of the contract (U. S. Const.

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am. Jur., Conflict of Laws, § 152.
[1] Full faith and credit provision as affecting insurance con-
    tracts. 41 A.L.R. 1386; 114 A.L.R. 250; 119 A.L.R. 483; 173
    A.L.R. 1138;
[1] Applicability to contracts made or to be performed in another
    State or country, of a statute of the forum permitting person
    injured to maintain action directly against indemnity insurer.
    54 A.L.R. 515.
[3] 12 Am. Jur., Constitutional Law, §§ 383, 387, 389, 390, 396.

art. 1, § 10; Mich. Const. 1908, art. 2, § 9; 3 Comp. Laws 1929, § 12766, as amended by Act No. 220, Pub. Acts 1939).

3. Statutes—Retroactive Operation as to Substance of Contract. A statute cannot be retroactive so as to change the substance of a contract previously entered into (U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9).

Appeal from Ingham; Coash (Louis E.), J. Submitted January 7, 1949. (Docket No. 43, Calendar No. 44,083.) Decided February 28, 1949.

Assumpsit by Dragica Byjelich against John Hancock Mutual Life Insurance Company to recover cash value of life insurance policy. Judgment for plaintiff. Defendant appeals. Reversed.

*John L. Leighton,* for plaintiff.

*Cook & Michelson,* for defendant.

Reid, J. On August 1, 1945, the plaintiff, Dragica Byjelich (formerly Dragica Eror), instituted this action in assumpsit in the circuit court for Ingham county, against the defendant, John Hancock Mutual Life Insurance Company, to recover the cash surrender value of two life insurance policies issued by defendant company on the life of Milan Eror, as to only one of which policies there is a dispute. Plaintiff claims that all rights of the said Milan Eror in the policy in dispute were assigned to her by a divorce decree, and that she had the right to surrender the policy and receive the cash surrender value thereof. Defendant appeals from a judgment for plaintiff.

The defendant filed its answer on November 30, 1945, reciting the fact that the policy of life insurance provided that any assignment of the policy or its benefits shall be void. Defendant claims that the Ingham county circuit court in a divorce action, to

which the insurer was not a party, could not assign said policy or its benefits to the plaintiff; that only the insured, Milan Eror, had the right to surrender said policy and receive the cash surrender value thereof, which right he never exercised, and that the policy provided that in case of default in payment of premium instalments, in the absence of an election by the insured to receive the cash surrender value, the policy should continue as extended term insurance. After the default occurred in this case, April 17, 1940, the term insurance would be for a period of 6 years and 45 weeks.

The case was submitted to the lower court on an agreed statement of facts.

On April 3, 1930, Milan Eror, a resident of Johnstown, Pennsylvania, applied for a policy of life insurance with the John Hancock Mutual Life Insurance Company of Boston, Massachusetts, defendant herein, in the amount of $520, which application was accepted. The company issued its policy in said amount to the said Milan Eror; in the policy, Dragica Eror, his wife, was named as beneficiary.

On December 28, 1935, defendant company issued to Milan Eror another policy of life insurance in the amount of $270, which lapsed for nonpayment of premiums, had no cash surrender value, and the extended insurance under the policy expired before this action was brought. This second policy is not before this Court for consideration.

The policy of life insurance at issue contains the following provisions:

"*Change of Beneficiary.* With the consent of the company, the insured, if of lawful age, may from time to time change the beneficiary by request to the home office upon the company's prescribed form accompanied by this policy, such change to take effect only upon indorsement hereon by the company.

"*Assignment.* Any assignment or pledge of this policy or of any benefits hereunder shall be void and of no effect.

"Nonforfeiture Benefits.—*Automatic Extended Term Insurance After Three Years.* After premiums shall have been paid on this policy for 3 full years, then, in case of failure to pay any subsequent premiums, the policy, without any further stipulation or act, will be binding on the company for its full amount as extended term insurance, commencing from the date to which the premiums shall have been paid, the length of the term to be determined by the period of premium payments, according to table A. The insurance will wholly cease and expire at the end of the term of extension to which the policy is entitled under its conditions.

"*Alternative Options of Paid-up Policy or Cash Surrender Value After Five Years.* After premiums shall have been paid on this policy for 5 full years, then, in case of failure to pay any subsequent premium, if the holder hereof, instead of having the policy continued as extended insurance as above provided, shall elect in place thereof to avail himself of either one of the following options, and shall signify his preference by writing filed with the company at its home office while the extended insurance is in force and not later than 13 weeks from the date to which the premiums shall have been paid, the company will, upon surrender of the policy,—

"Option 1. Issue in exchange therefor a paid-up policy according to table B, payable at the same time and on the same conditions as this policy.

"Option 2. Or, with the written assent of the person to whom the policy is payable, pay the cash surrender value according to table C, within 60 days after written demand therefor.

"If neither the option of paid-up policy nor of cash surrender value be chosen as above provided, then the policy will be continued as extended insurance, subject to its terms.   *   *   *

"The company will pay such value within 60 days after written demand therefor, upon surrender of the policy with the written assent of the person to whom it is payable."

Premiums on said policy were paid until March 20, 1940. The policy lapsed for nonpayment of the premium which became due on April 17, 1940. No premiums were paid by anyone after that date. On April 17, 1940, when the policy lapsed for nonpayment of premiums, it had a cash surrender value of $125.71, or extended term insurance of 6 years, 45 weeks, extending the policy to February 5, 1947.

On March 27, 1940, the circuit court for Ingham county entered a decree of divorce in a certain action wherein Dragica Eror was the plaintiff and Milan Eror was the defendant. Said decree provided, among other things:

"It is further ordered, adjudged and decreed, that Dragica Eror, the plaintiff, shall have and be declared to be the owner of certain policies of insurance with the John Hancock Life Insurance Company, Numbers 20630116, 29437930, and 27778982 and that Milan Eror, defendant, shall cause an assignment to be made to plaintiff of his interests in said policies and in the event of his failure to cause said assignments to be made forthwith, the provisions contained in this decree shall operate as an assignment of the defendant, Milan Eror's, interest in said policies to Dragica Eror."

On the day following the decree of divorce, Dragica Eror, who had possession of the policies, offered to surrender the policies to the company and demanded the cash surrender value thereof, which was refused by the defendant company.

Milan Eror never offered to surrender the policies nor requested payment of the cash surrender value thereof. The whereabouts of Milan Eror are un-

known.  Dragica Eror remarried and is the plaintiff, Dragica Byjelich, in this case.

The fact that Milan Eror, the insured, was a resident of Pennsylvania and the contract was made in Pennsylvania, does not require of us to consider the statutes and decisions of that State, as they stood at the time the contract of insurance in question was entered into on April 3, 1930.  The contract of insurance is unambiguous as to matters in issue; its construction is not doubtful.  No contest exists over the construction of the contract.  The State of Michigan is the place of enforcement of the contract.  Neither party claims that the law of Pennsylvania shall govern the enforcement of the contract.  Neither party claims that the fact that the contract was made in Pennsylvania defeats the applicability of the Michigan statute in question in the instant case.

The assignment to plaintiff in the divorce decree of March 27, 1940, was given and made under and in pursuance of the authority conferred by 3 Comp. Laws 1929, § 12766, as amended by Act No. 220, Pub. Acts 1939 (3 Comp. Laws 1948, § 552.101 [Comp. Laws Supp. 1940, § 12766, Stat. Ann. 1947 Cum. Supp. § 25.131]), the pertinent provisions of which are as follows:

"Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the husband in which she was named or designated as beneficiary, or to which she became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, and unless otherwise ordered in said decree such policy or contract shall thereupon become and be payable to the estate of the husband or to such

named beneficiary as he shall affirmatively designate."

Plaintiff claims and defendant denies that the divorce court had the right to assign the policy in question to plaintiff, and that plaintiff in pursuance of the decree of divorce had the right to elect to surrender the policy and receive the cash surrender value therefor.

Defendant further claims that the divorce court cannot nullify or change the terms of the policy of insurance and make disposition thereof in violation of the terms and conditions of the contract of insurance. Defendant further claims that if the statute in question, 3 Comp. Laws 1948, § 552.101 (Comp. Laws Supp. 1940, § 12766, Stat. Ann. 1947 Cum. Supp. § 25.131), gave the divorce court the authority to assign the interest of the insured to the plaintiff together with the right to elect to receive the cash surrender value, without the consent of the insurance company, the statute is unconstitutional because it impairs the obligation of contracts, in violation of article 2, § 9, of the Michigan State Constitution 1908, and article 1, § 10, of the Constitution of the United States.

We find that the legislature could give the divorce court no right to decree that plaintiff may substitute her personal judgment and discretion for the discretion and judgment of the insured Milan Eror on the subject of electing to surrender the policy and receive the cash surrender value therefor rather than that the policy should be continued as extended insurance where the policy forbids assignment.

Subject to the other terms of the policy (including nonassignability), defendant bargained (no statute at the time forbidding) for the personal judgment and discretion of Milan Eror to make the election and not for the personal judgment and discretion of

plaintiff Dragica Byjelich, Milan Eror's former wife, to make such election. Plaintiff's election would require the immediate payment of the cash surrender value to be made by defendant instead of continuance of the policy as extended term insurance, with payment contingent on the death of insured within the term. If the statute in question were construed to authorize the court to give plaintiff such substituted right of election, the statute would impair the obligation of the contract (*i.e.,* the policy already in force when the statute in question became effective), which impairment is forbidden by Michigan State Const. 1908, article 2, § 9, and article 1, § 10, of the United States Constitution.

We stated in *Guardian Depositors Corp.* v. *Brown,* 290 Mich. 433, at page 439,

"A statute cannot be retroactive so as to change the substance of a contract previously entered into."

By the same reasoning a court may not render a decree under the authority of a statute enacted after a contract has been entered into, which decree substantially impairs the contract.

The divorce court was without authority to confer on plaintiff Dragica Byjelich the right to terminate the policy and lawfully to demand the cash surrender value.

The judgment appealed from is reversed. No new trial ordered. Costs to defendant.

Sharpe, C. J., and Bushnell, Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred.