William J. KARL, Plaintiff-Appellant,

v.

BRYANT AIR CONDITIONING COMPA-NY and Carlysle Compressor Company, Defendants-Appellees.

No. 80–1035.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 8, 1981.

Decided April 13, 1983.

Ronald R. Stempien, Southgate, Mich., for plaintiff-appellant.

David J. Capriccioso, Sally Steinhart (argued), Southfield, Mich., for defendants-appellees.

Before MERRITT, Circuit Judge, BROWN, Senior Circuit Judge, and WHITE, District Judge.*

MERRITT, Circuit Judge.

In this product liability action, plaintiff appeals from a jury verdict awarding him $2,600, a figure that reflects the jury's conclusion that plaintiff was 95% responsible for his injury. Specifically, plaintiff contends that the District Court erred in applying the comparative negligence principles of Michigan's products liability statute, M.C.L.A. § 600.2949 to a diversity case sounding in breach of warranty. We affirm.

### I.

On May 23, 1975, while working as an air conditioner repairman, plaintiff was injured when an air conditioner manufactured by defendants blew out. He filed suit in Oakland Circuit Court on February 28, 1978, and defendants had the action removed to the Federal District Court for the Eastern District of Michigan under 28 U.S.C. § 1441. Both parties agreed that Michigan law governs this case.

On December 13, 1978—while this lawsuit was pending trial—the Michigan Legislature enacted the products liability statute, M.C.L.A. § 600.2945 *et seq.,* effective immediately. As relevant here, this statute provides that:

> In all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representative, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

In a set of special verdict interrogatories, Judge Joiner instructed the jury that they were to determine plaintiff's contributory negligence as a percentage of the total wrongdoing that caused the injury, provided they found either the defendants' negligence or defendants' breach of implied warranty had proximately caused plaintiff's injury. In pertinent part, the jury's special verdict found that plaintiff had sustained a total of $52,000 in damages, that defendants had breached an implied warranty, that plaintiff had been negligent, and that his negligence accounted for 95% of the total wrongdoing. Judge Joiner accordingly awarded plaintiff $2600, 5% of the total damage amount.

### II.

On October 8, 1981, this Court heard plaintiff's appeal.[1] Shortly thereafter, we certified the following three questions of state law to the Michigan Supreme Court:

(1) whether the products liability statute abrogated the principle that a person injured because of a breach of an implied warranty is entitled to recover the full measure of the damages sustained irrespective of any negligence by him;

---

* The Honorable George W. White, United States District Court Judge for the Northern District of Ohio, sitting by designation.

1. In an Order filed November 2, 1981, this Court rejected plaintiff's other claim on appeal, to wit, that the District Court erred in excluding plaintiff's expert's testimony regarding defective design.

(2) whether the statute, if construed to have so abrogated the principle, is to be applied to an action alleging breach of an implied warranty accruing and brought prior to the enactment of the statute and brought to trial after the effective date of the statute; and

(3) if so applied, whether that application violates the Due Process Clause of the Michigan Constitution.

The Michigan Supreme Court answered questions (1) and (2) affirmatively and question (3) negatively, and explained its unanimous decision in a comprehensive and well-reasoned opinion, attached hereto as an Appendix.

### III.

Although the Michigan Supreme Court's decision disposes of all state law issues that plaintiff has raised in his appeal, this Court must still decide whether the retroactive application of the Michigan products liability statute as construed by the state Supreme Court violates two provisions of the *federal* constitution, namely the due process clause of the fourteenth amendment and the prohibition against state impairment of contracts (U.S. Const. Art. I § 10).

In his argument to this Court, plaintiff did not contend that the federal due process guarantee differs in any qualitative way from the similar provision in the Michigan constitution. Indeed, the due process argument in plaintiff's brief proceeds without distinguishing between the federal and state constitutional provisions.

We believe that the Michigan Supreme Court's analysis of plaintiff's state due process claim applies equally to the federal due process issue. We, therefore, adopt the state court's reasoning, which reads as follows:

An application of the comparative negligence provision at trial, besides promoting important societal policy, did not destroy or bar plaintiff's cause of action.... As the defendant so adroitly points out, the products liability statute neither destroys nor bars plaintiff's cause of action, nor does it impair plaintiff's right to contract. Simply stated, the statute only affects a remedy which "has been changed so that the measure of plaintiff's damage is to be reduced by the amount of the plaintiff's own fault which also proximately caused the injuries complained of." Thus, the Legislature's adoption of such a remedial scheme is reasonable and does not violate the Due Process Clause of the Michigan Constitution.

*Karl v. Bryant Air Conditioning Co.,* 416 Mich. 558, 331 N.W.2d 456 (1982). The due process clause does not prevent states from modifying previously defined tort and contract remedies, including modification of principles respecting contributory negligence and statutes of limitation. *Cf. Murphree v. Raybestos-Manhattan, Inc.,* 696 F.2d 459, 462 (6th Cir.1982) (federal due process clause does not insulate "vested rights" from amendments to state statutes of limitation).

Similar reasoning compels us to reject plaintiff's challenge under the contract impairment clause of the federal constitution, which provides that "[no] State shall ... pass any ... Law ... impairing the Obligation of Contracts." U.S. Const. Art. I § 10. Plaintiff argues that since "implied warranty litigation is essentially contractual in nature," retroactive application of the products liability statute relieves the defendants "of the quasi-contractual obligation to fulfill implied warranties and, upon breach, to pay for the full damages caused." This argument suffers from the same flaw that fatally undermined plaintiff's due process contention. In attempting to delineate a constitutional violation, plaintiff confuses his right to have the substantive provisions of a valid contract enforced with the legislature's right to define the scope of the judicial remedy available to successful plaintiffs in contract actions. As in the due process setting, we believe that legislative modification of remedy does not infringe the plaintiff's right to contract or deprive him of his contract enforcement cause of action.

Accordingly, the judgment of the District Court is affirmed.

## APPENDIX

### STATE OF MICHIGAN
### SUPREME COURT

RE: Certified Questions from the United States Court of Appeals for the Sixth Circuit on Appeal from the United States District Court, Eastern District of Michigan, Southern Division

WILLIAM J. KARL,
      *Plaintiff-Appellant,*

    v.

BRYANT AIR CONDITIONING COMPANY AND CARLYLE COMPRESSOR COMPANY, both Divisions of Carrier Corp., a foreign corporation jointly and severally,
      *Defendants-Appellees.*

No. 68258

Filed December 23, 1982

BEFORE THE ENTIRE BENCH (except RILEY, J.)

WILLIAMS, Justice.

## INTRODUCTION

This is a case of first impression. The issues are whether the comparative negligence provisions of M.C.L. § 600.2949; M.S.A. § 27A.2949,[1] applies to a products liability action sounding in "negligence, *breach of warranty* and other misconduct";

1. M.C.L. § 600.2949; M.S.A. § 27A.2949 provides that:

> "(1) In all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.
> "(2) If the court determines that the claim or defense is frivolous, the court may award costs and reasonable attorney's fees to the prevailing party in a products liability action.

and, if so, whether it is retrospective; and, if retrospective, whether it is constitutional.

This diversity case was removed from Oakland Circuit Court to the United States District Court for the Eastern District of Michigan. Plaintiff was injured when the terminal of an industrial air conditioner manufactured by defendant, a foreign corporation, blew out. After a verdict for the plaintiff, the federal trial judge, under M.C.L. § 600.2949; M.S.A. § 27A.2949, reduced plaintiff's damages by the corresponding amount that plaintiff was negligent, which was 95% of the total.

Specifically, we have agreed to answer three questions certified to us by the United States Court of Appeals for the Sixth Circuit. The three questions are the following:

"I. Whether the Michigan products liability statute, MCL 600.2945 *et seq.;* MSA 27A.2945 *et seq.,* is to be construed as abrogating the principle of Michigan implied warranty jurisprudence that a plaintiff injured by breach of an implied warranty is entitled to recover the full measure of damages sustained, irrespective of any negligence by the plaintiff.

"II. Whether the Michigan products liability statute, MCL 600.2945 *et seq.;* MSA 27A.2945 *et seq.,* if so construed, is to be applied to an implied warranty action accruing and sued upon prior to the enactment of the statute and brought to trial after the effective date of the statute.

"III. Whether the Michigan products liability statute, MCL 600.2945 *et seq.;*

Moreover, M.C.L. § 600.2945; M.S.A. § 27A.2945 provides that:

> "As used in sections 2946 to 2949 and section 5805, 'products liability action' means an action based on any legal or equitable theory of liability brought for or on account of death or injury to person or property caused by or resulting from the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling of a product or a component of a product."

MSA 27A.2945 *et seq.,* if so construed and applied, violates the Due Process Clause (art 1, § 17) of the Michigan Constitution of 1963."

We hold first that under M.C.L. § 600.- 2949; M.S.A. § 27A.2949 a plaintiff injured by breach of an implied warranty is not entitled to recover the full damages sustained, if the plaintiff was negligent. Second, under Michigan law, the comparative negligence principle established in M.C.L. § 600.2949; M.S.A. § 27A.2949 can be applied to an implied warranty action accruing and sued upon prior to the enactment of the provision, but brought to trial after the effective date of that provision. Third, applying the statute in that way does not violate the Due Process Clause of the Michigan Constitution. Const.1963, art. 1, § 17.

## FACTS

In certifying the instant case from the Court of Appeals for the Sixth Circuit under GCR 1963, 797.2, the following statement of facts was entered by order:

"On May 23, 1975, while employed in Southfield, Michigan, as an air conditioner repairman, plaintiff William Karl was injured when the terminal of an industrial air conditioner manufactured by defendants blew out. On February 28, 1978, plaintiff filed suit in Oakland Circuit Court, alleging negligence and breach of implied warranty. Thereafter, the action was removed by defendants to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1441. As a case falling within federal diversity jurisdiction, the substantive law which the trial judge was obliged to apply, and which this Court is required to apply, is the substantive law of the State of Michigan.

"While this case was pending in the trial court, the Michigan Legislature, on December 13, 1978, enacted the Michigan products liability statute, M.C.L. § 600.2945 *et seq.*

[M.S.A. § 27A.2945 *et seq.*], effective immediately. Therefore, this action came for trial before the Hon. Charles W. Joiner and a jury. At the conclusion of trial, the jury returned a special verdict finding, in pertinent part, that the total damages sustained were $52,000.00, that defendants breached an implied warranty, that plaintiff was negligent, and that plaintiff's negligence amounted to 95% of the total.

"Defendants then sought entry of judgment in the amount of $2,600 (5% of $52,-000), while plaintiff sought entry of judgment in the amount of $52,000, the full measure of damages. Judge Joiner accepted the position advocated by defendant. Plaintiff then appealed to this Court, presenting the above-described issues of Michigan law."

I. WHETHER THE MICHIGAN PRODUCTS LIABILITY STATUTE, M.C.L. § 600.2945 *ET SEQ.;* M.S.A. § 27A.2945 *ET SEQ.,* IS TO BE CONSTRUED AS ABROGATING THE PRINCIPLE OF MICHIGAN IMPLIED WARRANTY JURISPRUDENCE THAT A PLAINTIFF INJURED BY BREACH OF AN IMPLIED WARRANTY IS ENTITLED TO RECOVER THE FULL MEASURE OF DAMAGES SUSTAINED, IRRESPECTIVE OF ANY NEGLIGENCE BY THE PLAINTIFF.

The United States Court of Appeals for the Sixth Circuit has requested that we consider whether the federal trial judge erred, as a matter of Michigan law, in reducing plaintiff's recovery by 95% under the comparative negligence principle adopted in M.C.L. § 600.2949; M.S.A. § 27A.2949. This requires us to determine whether the comparative negligence principle in that section was intended to apply to products liability actions sounding in implied warranty.[2]

**2.** During oral arguments, Justice Ryan addressed the following question to defense counsel: "whether it is within the competence of the Legislature to make a law concerning what is and what is not admissible evidence". He further asked whether counsel was familiar with *Perin v. Peuler,* 373 Mich. 531, 130 N.W.2d 4 (1964). Defense counsel's answer and a re-

The plaintiff argues that both historically and presently products liability actions may sound either in negligence or breach of warranty without establishing privity with the defendant. See *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 134–135, 90 N.W.2d 873 (1958); *Piercefield v. Remington Arms Co., Inc.,* 375 Mich. 85, 98, 133 N.W.2d 129 (1965).[3] He then makes three points. First, "'concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases. Proof of negligence is unnecessary to liability for breach of implied warranty and the lack of it is immaterial to defense thereof.'" *Piercefield, supra,* 96, 133 N.W.2d 129, quoting *Picker X-Ray Corp. v. General Motors Corp.,* 185 A.2d 919 (DC App.1962).[4] [7] Second, the Legislature did not repeal the implied warranty cause of action in enacting M.C.L. § 600.-2949; M.S.A. § 27A.2949 and thereby create a "single theory of recovery" as found by *Jorae v. Clinton Crop Service,* 465

F.Supp. 952 (ED Mich, 1979). [22] In other words, he argues there is no warrant to diminish the verdict by the percentage of plaintiff's comparative negligence, because a breach of warranty action is extant and is a contractual, not a negligence, action. Among other reasons advanced for this conclusion were (a), that since redress was sought for injury caused by "manufacture, construction, design", etc., the Legislature was not thinking of an implied warranty action, and (b), that the term "comparative fault" was rejected in favor of the term "comparative negligence".[5] [22] Third, in M.C.L. § 600.2949; M.S.A. § 27A.2949, the Legislature intended to apply comparative negligence only to products liability negligence actions; [2] and this also indicates that the Legislature was not thinking of implied warranty actions.

Defendant, on the other hand, has made two main arguments. First, referring to *Jorae, supra,* and to Justice Levin's opinion,

view of the briefs clearly indicates that the parties in the instant case were unfamiliar with *Perin.* Moreover, this issue was not considered by the trial court.

The certified questions in the instant case do not raise the propriety of applying the statutory rules of evidence found in the products liability statute. See M.C.L. § 600.2946; M.S.A. § 27A.2946, M.C.L. § 600.2947; M.S.A. § 27A.2947, M.C.L. § 600.2948; M.S.A. § 27A.2948.

Since the issue has not been raised or briefed and its consideration is not necessary in answering the certified questions, the general rule of law is that this Court will not consider such an extraneous issue. See *Turner v. Consumers Power Co.,* 376 Mich. 188, 191–192, 136 N.W.2d 1 (1965). See, also, *Heider v. Michigan Sugar Co.,* 375 Mich. 490, 517, 134 N.W.2d 637 (1965) (Adams, J., dissenting). See, also, *Swartz v. Dow Chemical Co.,* 414 Mich. 433, 326 N.W.2d 804 (1982).

**3.** See Comment, *Products Liability in Michigan: Implied Warranty, Strict Tort, or Both,* 15 Wayne L.Rev. 1558 (1969). See, also, Dolan, *Commercial Transactions, 1980 Annual Survey of Michigan Law,* 27 Wayne L.Rev. 589, 605 (1981).

**4.** In *Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 91, 273 N.W.2d 476 (1979), this Court stated that:

"This opinion is limited solely to its facts. We do not suggest that implied warranty and negligence are not independent causes of ac-

tion. When the factual issue is the adequacy of the warnings given, the legal standard under either theory is one of reasonable care under the circumstances. Note should be made, however, that *on different facts* it could be prejudicial error *not* to give the implied warranty instruction. See, *e.g., Midgley v. S S Kresge Co,* 55 CalApp3d 67; 127 CalRptr 217 (1976) (issue of contributory negligence requires instruction on both negligence and strict liability)."

**5.** On May 15, 1978, the second draft of House Bill 5689, which preceded M.C.L. § 600.2949; M.S.A. § 27A.2949, was introduced. This provision stated:

"Sec. 2949. (1) IT SHALL BE A REBUTTABLE DEFENSE IN A PRODUCTS LIABILITY ACTION THAT THE PLAINTIFF WAS COMPARATIVELY NEGLIGENT OR AT FAULT. THE COURT OR A JURY IN DETERMINING LIABILITY OR THE AMOUNT OF DAMAGES OF THIS DEFENSE IS ALLEGED SHALL WEIGH THE COMPARATIVE NEGLIGENCE OR FAULT OF EACH PARTY AND ASSESS A PORTION OF THE LIABILITY OR DAMAGES BASED ON THE COMPARATIVE NEGLIGENCE OR FAULT OF EACH PARTY."

See also, 12 ULA, Civil Procedural & Remedial Laws, Uniform Comparative Fault Act, § 1b, p 34 (1982 Cum Supp); *Products Liability Task Force,* 58 Mich.Bar J. 524, 525 (1979).

as a Court of Appeals judge, in *Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 614, 182 N.W.2d 800 (1970), the defendant suggests that the Legislature in 1978 P.A. 495 may have intended to create "one theory of 'products liability' " [8] and thereby eliminate the so-called contractual exemption from contributory negligence and comparative negligence. Second, defendant argued that the Legislature intended the comparative negligence provision to apply by its plain and specific language to "all" and "any" products liability actions. [3]

Our reading of the statute does not require us to determine whether the Legislature completed the possible confluence of products liability negligence and implied warranty actions into one cause of action or whether two separate actions still remain extant. We hold that the combination of § 2949, the products liability comparative negligence section, and § 2945, the section defining products liability actions, by plain, unambiguous language, indicates that the Legislature intended to apply comparative negligence to all products liability actions, regardless of whether two separate actions in negligence and breach of warranty remain extant or whether a new unified products liability action was created by the act.

Before examining the actual language of the statute, it is well to have in mind certain rules of statutory construction. The most important rule, of course, is to discover and give effect to the legislative intent. *Spartan Asphalt Paving Co. v. Grand Ledge Mobile Home Park,* 400 Mich. 184, 187, 253 N.W.2d 646 (1977); *Dussia v. Monroe County Employees Retirement System,* 386 Mich. 244, 248, 191 N.W.2d 307 (1971).

The next rule is to derive the legislative intention from the actual language used in the statute. *Grand Rapids v. Crocker,* 219 Mich. 178, 182–183, 189 N.W. 221 (1922). If the language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary.

*Dussia v. Monroe County Employees Retirement System, supra,* 386 Mich. p. 248, 191 N.W.2d 307; *MacQueen v. City Comm. of Port Huron,* 194 Mich. 328, 342, 160 N.W. 627 (1916).

We believe that the language of § 2949, particularly in conjunction with § 2945, is clear and unambiguous. Sections 2949 and 2945 are here set out for review:

"Section 2949. (1) In *all* products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff." (Emphasis added.)

"Section 2945. As used in sections 2946 to 2949 and section 5805, 'products liability action' means *an action based on any legal or equitable theory of liability* brought for or on account of death or injury to person or property caused by or resulting from the manufacture, construction, design, formula, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, advertising, packaging, or labeling of a product or a component of a product." (Emphasis added.)

In § 2949, the operative language is "*all* products liability actions". This language is defined in § 2945 as follows: " 'products liability action' means an action based on *any* legal or equitable theory of liability". It is difficult to imagine any language more all-inclusive.

As a consequence, it is clear and unambiguous that the Legislature intended that comparative negligence should apply to "*all* products liability actions", which include a " 'products liability action' * * * based on *any* legal or equitable theory of liability".[6]

---

**6.** See, generally, Note, *Timmerman v. Universal Corrugated Box Machinery Corp.—An Exception To the Doctrine of Comparative Negli-* gence *in Products Liability Litigation: Michigan Courts Speak Out On Public Act* 495, 1981 Det C L Rev. 222, 235. See, also, Comment,

It is inescapable that any and every products liability action is included regardless of whether it is labeled a possible unified action, a possible negligence action, or a possible implied warranty action.

We believe that the Legislature's use of the words "all" and "any" require, without further interpretative inquiry, the construction that comparative negligence applies to all and any products liability actions, including those sounding in implied warranty. See *Paquin v. Harnischfeger Corp.,* 113 Mich.App. 43, 50, 317 N.W.2d 279 (1982); *McGrath v. Clark,* 89 Mich.App. 194, 197, 280 N.W.2d 480 (1979). As a consequence, we are not persuaded by plaintiff's arguments that the Legislature intended § 2949 to apply only to negligence actions. The plain, unambiguous language of the statute is such that we need not speculate on its legislative history. Furthermore, we are not impressed by the plaintiff's argument that an implied warranty products liability action is not included in the long litany found in § 2945 which describes the act's effect on the various stages a product may go through before it causes injury to a plaintiff.

Thus, we hold that the comparative negligence principle adopted in M.C.L. § 600.-2949; M.S.A. § 27A.2949 dictates that "damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff" irrespective of the fact that a plaintiff is injured by the breach of an implied warranty.[7]

*Public Act 495—A Beginning Step in Products Liability Reform in Michigan,* 1979 Det C L Rev 677, 688, ff.

**7.** In *Hardy v. Monsanto Enviro-Chem Systems Inc.,* 414 Mich 29, 47, fn. 12, 323 N.W.2d 270 (1982), this Court, in effect, refused to address some of the questions in the instant case. We stated that:

"We decline to speculate about the effect of *Placek* [*v. Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511] and the products liability statute, MCL 600.2945; MSA 27A.2945, on the law of products liability. This case, as well as *Tulkku* [*v. Mackworth Rees Division of Avis Industries, Inc.,* 406 Mich. 615, 281 N.W.2d 291] and *Funk* [*v. General Motors Corp.,* 392 Mich. 91, 220 N.W.2d 641] are negligence cases. The cases cited in our

## II. WHETHER THE MICHIGAN PRODUCTS LIABILITY STATUTE, M.C.L. § 600.2945 *et seq.;* M.S.A. § 27A.2945 *et seq.,* IF SO CONSTRUED, IS TO BE APPLIED TO AN IMPLIED WARRANTY ACTION ACCRUING AND SUED UPON PRIOR TO THE ENACTMENT OF THE STATUTE AND BROUGHT TO TRIAL AFTER THE EFFECTIVE DATE OF THE STATUTE.

### A. The Four Rules of Retrospectivity

In answering Question I, we have held that the products liability statute, in light of § 2949, establishes the principle of comparative negligence in an action based on implied warranty. In considering Question II, we address whether § 2949 applies where the statute was enacted subsequent to the injury and commencement of an implied warranty action, but prior to the trial and judgment in that action. We hold that § 2949 should be applied under such circumstances.

In answering this question, we must consider four rules in determining whether a new act applies to a pre-enactment cause of action. First, is there specific language in the new act which states that it should be given retrospective or prospective application. See headnote No. 1, *Hansen-Snyder Co. v. General Motors Corp.,* 371 Mich. 480, 124 N.W.2d 286 (1963). Second, "[a] statute is not regarded as operating retrospectively

brother's opinion for the proposition that comparative negligence should not apply are inapplicable. *Zerby v Warren,* 297 Minn 134, 141; 210 NW2d 58 (1973), held that no comparative negligence defense was available under a statute imposing strict liability for selling model airplane glue to a minor; *Suter v San Angelo Foundry & Machine Co,* 81 NJ 150; 406 A2d 140 (1979), was a strict liability case holding that comparative negligence was unavailable under those facts but noting that comparative negligence *is* a defense in some strict liability cases. See *Ettin v Ava Truck Leasing, Inc,* 53 NJ 463; 251 A2d 278 (1969); *Cintrone v Hertz Truck Leasing & Rental Service,* 45 NJ 434; 212 A2d 769 (1965)."

[solely] because it relates to an antecedent event". *Hughes v. Judges' Retirement Board,* 407 Mich. 75, 86, 282 N.W.2d 160 (1979). Third, "[a] retrospective law is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past". *Hughes, supra,* p. 85, 282 N.W.2d 160; *Ballog v. Knight Newspapers, Inc.,* 381 Mich. 527, 533–534, 164 N.W.2d 19 (1969). Fourth, a remedial or procedural act which does not destroy a vested right will be given effect where the injury or claim is antecedent to the enactment of the statute. *Rookledge v. Garwood,* 340 Mich. 444, 65 N.W.2d 785 (1954).

### B.

The first and second rules are inapplicable to the instant case. As to the first rule, the products liability statute contains no specific language indicating either retrospective or prospective application. Second rule cases relate to measuring the amount of entitlement provided by a subsequent statute in part by services rendered pursuant to a prior statute, whereas the instant case relates to what if any changes may be made with respect to a cause of action begun under one rule of law by a subsequent statute. Examples of second rule cases are measuring the amount of a judicial pension not only by years served subsequent to enactment but also by years served under a previous act, *Hughes, supra,* and measuring the amount of highway entitlement not only by expenditures subsequent to enactment but also by expenditures under a previous act. *Clearwater Twp. v. Kalkaska County Supervisors,* 187 Mich. 516, 153 N.W. 824 (1915).

### C.

Rules three and four define the issue in Question II. Both rules relate to retrospective application of a new law to prior facts. The third rule and the cases thereunder define those retrospective situations that are not legally acceptable, whereas the fourth rule defines those that are acceptable.

The third rule states that retrospective application of a law is improper where the law "takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past". *Hughes, supra,* 407 Mich. p. 85, 282 N.W.2d 160. The fourth rule was stated in *Hansen-Snyder, supra* (Headnote No. 1):

"1. STATUTES—REMEDIES—RETROSPECTIVE OPERATION—AMENDMENT. Statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment."

We will examine the general statement of each rule and the specific factors in the cases relating to that rule. When we have done this, we will then compare the facts in the instant case with those rules and factors to determine which rule should cover the instant case.

### D. Rule Three Cases

#### 1. Impairment of Contractual Rights

In marshalling his arguments under this certified question, the plaintiff relies on two lines of cases which have a distinct cleavage, even though the Court in both lines of cases has invoked the general proscription found in rule three. Under the first line of cases, the plaintiff asserts that a retrospective application of the products liability statute interferes with his "contractual cause of action" since "implied warranty litigation is essentially contractual in nature". *E.g., Campbell v. Judges' Retirement Board,* 378 Mich. 169, 143 N.W.2d 755 (1966); *Byjelich v. John Han-*

cock Mutual Life Insurance Co., 324 Mich. 54, 36 N.W.2d 212 (1949); *McGavock v. Ducharme,* 192 Mich. 98, 158 N.W. 173 (1916).

A review of these cases, however, does not support plaintiff's position, since the contracts in those cases did not involve implied warranties but were "express" contracts.

### 2. Abolition of a Cause of Action

The general rule against retrospective application has been applied in cases where a new statute abolishes an existing cause of action. It is clear that once a cause of action accrues,—*i.e.,* all the facts become operative and are known—it becomes a "vested right". See *Connelly v. Paul Ruddy's Equipment Repair & Service Co.,* 388 Mich. 146, 150–152, 200 N.W.2d 70 (1972); *Devlin v. Morse,* 254 Mich. 113, 115, 235 N.W. 812 (1931). A new statute which abolishes an existing cause of action brings the statute within the general proscription of rule three.

In *Devlin,* for example, this Court held that the guest passenger act should not have been applied to a plaintiff's claim which accrued prior to the new act. When the plaintiff passenger was injured, the common law recognized his right to sue the driver of the car for ordinary negligence. The new act, however, only allowed suit when a driver was grossly negligent. This Court refused to apply the new act to the plaintiff's common-law claim, which was sued upon after the new act became effective, but where the injury had occurred before its enactment, because the new law abolished the plaintiff's accrued cause of action. *Devlin, supra,* p. 116, 235 N.W. 812.

Similarly, in *Cusick v. Feldpausch,* 259 Mich. 349, 353, 243 N.W. 226 (1932), the plaintiff passenger was held to have a statutory claim to sue the owner of a car for the ordinary negligence of the driver. The amendment of that statute, which was adopted after plaintiff's action had accrued, only allowed the plaintiff to sue the owner where the driver was grossly negligent. Because plaintiff's cause of action would have been totally barred by a retrospective application, we stated that this case did not involve a "mere change in remedy or procedure", but affected a rule of substantive law.

Finally, in *Minty v. Board of State Auditors,* 336 Mich. 370, 58 N.W.2d 106 (1953), the plaintiff sustained personal injuries at a time when the state waived sovereign immunity from liability for the injuries caused by the tortious conduct of its employees. Before the plaintiff's cause of action had been reduced to judgment in the Court of Claims, the act was repealed. The state argued that it could raise the total bar of governmental immunity. Once again, this Court refused to apply a statute retrospectively because it totally barred the plaintiff from recovery for his damages.

The converse factual setting to the cases discussed is found in *Rookledge, supra.* At the time of the plaintiff's work-related accident, he had to elect between workers' compensation benefits from his employer and bringing an action against a third-party tortfeasor. The plaintiff elected to receive compensation benefits, thereby barring his third-party claim. After he received his compensation benefits, the workers' compensation act was amended to permit the worker both options. He brought suit against the third-party tortfeasors, and this Court held that the defendant did not have a "vested right" in the statutory defense dependent upon the plaintiff's election accorded him prior to the new act. 340 Mich. 457, 65 N.W.2d 785.

### E. Rule Four Cases

The case law development of rule four establishes the corollary to the general proscription found in rule three. A remedial or procedural statute may operate retrospectively if it does not "take away vested rights". *Ballog v. Knight Newspapers, Inc., supra,* 381 Mich. pp. 533–534, 164 N.W.2d 19, quoting from headnote No. 1 of *Hansen-Snyder Co. v. General Motors Corp.,* 371 Mich. 480, 124 N.W.2d 286 (1963).

Moreover, in *Guardian Depositors Corp. v. Brown,* 290 Mich. 433, 439–440, 287 N.W. 798 (1939), this Court, in a "contract case", stated that the Legislature may modify, limit, and even alter the *remedy* for enforcement of a contract without violating the rule against retrospectivity. Thus, such a new act would fall into rule four because it does not completely deny a remedy with such restrictions that it impairs the value of the contract or the substantive right.

Although *Rookledge, supra,* was considered in our discussion of rule three, its holding supports our analysis of rule four. While the *Rookledge* court found that the defendant third-party tortfeasor did not have a vested right in a statutory defense which barred the plaintiff from suit once he elected workers' compensation benefits, that court implicitly recognized, consistent with rule four, that the fact that the new statute changes the legal consequences of a prior act does not prevent a retrospective application of that statute, since that statute is remedial in nature.

In *Hansen-Snyder, supra,* this Court held that a plaintiff could take advantage of a statutory amendment which extended the period for serving notice of intent to claim a lien from 60 days to 90 days from the date of first furnishing labor and material. The plaintiff, who had begun work under the prior statute, had failed to file within the old act's 60-day prescription. Nevertheless, the new act was viewed as a procedural amendment which was applicable to the plaintiff's claim.

Once again, in *Ballog, supra,* this Court, in a case procedurally similar to the instant case, applied a new act retrospectively. The Court in *Ballog* had to determine whether a statute in effect at the time of the plaintiff's injury which granted interest "from the date of judgment" or a new act which granted interest "from the date of filing the complaint" was applicable. The plaintiff's personal injury cause of action accrued before the new act became effective, and he also filed suit before its enactment. Nevertheless, we indicated that the new act fell within the remedial or procedural classification which *did not take away a vested right,* and, thus, we gave the new act retrospective effect. 381 Mich. 533–536, 164 N.W.2d 19.

### F. Comparing the Instant Case to Rule Three and Four Cases

In comparing the instant case to rule three and rule four cases discussed, it is immediately apparent that the federal trial judge did not err under Michigan law in applying the products liability statute in the case at bar where plaintiff's claim accrued and was sued upon prior to the time the new statute became effective. On the one hand, it is conceded that plaintiff's right became "vested" when his cause of action accrued. But, on the other hand, two things are clear. First, § 2949 is part of a remedial statute which may be applied retrospectively. Second, the relevant case law indicates to us, when we compare it to the case at bar, that plaintiff's right was not taken away in the technical meaning of the case law proscription.

#### 1. Rule Three Cases

Comparison of "rule three cases" to the instant case indicates that application of the products liability statute did not trigger the proscription found in rule three. First, the statute did not interfere with plaintiff's "contractual cause of action" since an implied warranty action for personal injuries caused by a defective product is different from an express contract. Second, this rule is also triggered when a plaintiff's accrued cause of action would be totally barred or taken away by a new act. While the total damages which plaintiff could have received were significantly reduced by § 2949, plaintiff's cause of action was not legally barred or taken away.

Section 2949 does not bar any claim, legal or equitable, but it states that "damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff". See, also, *Li v. Yellow Cab Co. of California,* 13 Cal.3d 804, 828–829, 119 Cal.Rptr. 858, 875, 532 P.2d 1226, 1243 (1975). Section 2949 is

not a legal bar, but is a principle established by the Legislature which mitigates damages in products liability actions.

In short, we hold that the applicability of the products liability statute in the instant case did not offend Michigan's general rule against the retrospective application of a statute which "take[s] away vested rights". *Ballog, supra,* 381 Mich. pp. 533–534, 124 N.W.2d 286.

#### 2. Rule Four Cases

Notwithstanding the general proscription of rule three, this Court has recognized that new remedial or procedural statutes which do not destroy vested rights should be given retrospective application. The plaintiff does not contend that his cause of action was destroyed by the application of § 2949. Thus, the key factor is to determine whether the new act concerns remedies or modes of procedure.

The tenor of the products liability statute and the legislative history referred to in the briefs indicate that the Legislature was responding to complaints about the cost of products liability insurance and the operation of products liability law prior to its enactment. See *Products Liability Task Force,* 58 Mich.Bar J. 524, 525 (1979). See, also, *Jorae v. Clinton Crop Service,* 465 F.Supp. 952 (ED Mich., 1979). Since the Legislature has adopted comparative negligence as a principle which reduces plaintiff's damages in proportion to the amount of his negligence, such legislation operates to improve and further a remedy. As *Rookledge, Hansen-Snyder,* and *Ballog* make explicitly clear, legislation with such a purpose is remedial in nature.

Thus, rule four supports our holding that the federal trial judge did not err, as a matter of Michigan law, in applying the comparative negligence principle adopted in § 2949 to an implied warranty action for personal injuries caused by a defective product which had accrued and was sued upon prior to the enactment of the products liability statute and was brought to trial after the effective date of that statute.

### III. WHETHER THE MICHIGAN PRODUCTS LIABILITY STATUTE, IF SO CONSTRUED AND APPLIED, VIOLATES THE DUE PROCESS CLAUSE (ART. 1, § 17) OF THE MICHIGAN CONSTITUTION.

The plaintiff asserts that if this Court holds that the Legislature intended the act to be given retroactive effect, such an interpretation violates the Due Process Clause of the Michigan Constitution.[8] He argues that once his claim accrues, it becomes a vested property right subject to due process protection. The plaintiff contends that his cause of action accrued and vested on May 23, 1978, and that any impairment of this "vested property right in an implied warranty action must be measured against due process guarantees".

The nature of plaintiff's argument is the undoing of his constitutional claim. An application of the comparative negligence provision at trial, besides promoting important societal policy, did not destroy or bar plaintiff's cause of action. This Court is reluctant, on constitutional grounds, to apply statutes which accomplish this evil. See *Minty v. State, supra,* 386 Mich. pp. 389–391, 58 N.W.2d 106. As the defendant so adroitly points out, the products liability statute neither destroys nor bars plaintiff's cause of action, nor does it impair plaintiff's right to contract. Simply stated, the statute only affects a remedy which "has been changed so that the measure of plaintiff's damages is to be reduced by the amount of the plaintiff's own fault which also proximately caused the injuries complained of". Thus, the Legislature's adoption of such a remedial scheme is reasonable and does not violate the Due Process Clause of the Michigan Constitution.

---

**8.** Const.1963, art. 1, § 17, states that:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

CONCLUSION

Our review of M.C.L. § 600.2949; M.S.A. § 27A.2949 and the relevant case law indicates that the Legislature intended comparative negligence to apply in an action for breach of implied warranty. Moreover, our interpretation of Michigan law leads us to hold that M.C.L. § 600.2949; M.S.A. § 27A.2949 can be applied in a case where the implied warranty action accrues and is sued upon prior to the enactment of the provision and is brought to trial after the effective date of that provision. Finally, such an application does not violate the Due Process Clause of the Michigan Constitution. Const.1963, art. 1, § 17.

[Signatures Omitted]